**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

KEVIN RENARD HARVEY, II,                    *

Plaintiff,                                            *

v.                                                         *            Civil Action No. ELH-19-1051

MARYLAND PAROLE & PROBATION,     *
LAURA Y. ARMSTEAD,
  *Acting Warden of Patuxent Institution*,    *
STATE ATTORNEY GENERAL,
                                                           *
Defendants.

                              ***

## MEMORANDUM OPINION

The self-represented plaintiff, Kevin Renard Harvey, II, an inmate currently incarcerated at the Calvert County Detention Center in Barstow, Maryland, filed suit on April 8, 2019, against defendants Maryland Parole & Probation ("MPP"), Laura Armstead, Acting Warden of the Patuxent Institution in Jessup, Maryland ("Patuxent"), and the "State Attorney General." ECF 1. Harvey claims that defendants have held him against his will and without a final parole revocation hearing, in violation of his due process rights under the 14th Amendment to the Constitution. *Id.* at 4. Harvey also complains about his conditions of confinement at Patuxent. *Id.* at 4-5. He seeks release from the custody of the Division of Correction ("DOC") and monetary damages. *Id.* at 3, 5.

Defendants have moved to dismiss or, in the alternative, for summary judgment. ECF 16. Their motion is supported by a memorandum of law (ECF 16-1) (collectively, the "Motion") and several exhibits.[1] Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court

---

[1] The Motion does not make clear whether it was joined by the "State Attorney General." Because counsel specifies in a footnote the various defects in the suit as to the State Attorney General, ECF 16-1 at 1 n.1, I shall assume that the "State Attorney General" joins the Motion.

informed Harvey that the failure to file a response in opposition to the defendants' Motion could result in dismissal of his Complaint. ECF 17. Harvey responded on August 28, 2019. ECF 18.

The matter is now ripe for disposition. Upon review of the record, exhibits, and applicable law, the court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2018). Defendant MPP shall be dismissed from suit. Defendant Armstead's Motion shall be construed as a motion for summary judgment and shall be granted.

## I.      Factual Background

On September 13, 2018, Harvey was placed on "Hold Without Bond" in case number D-041-CR-18-001442 (Dist. Ct. for Calvert Cty.), charging him, *inter alia*, with illegal possession of firearms and CDS offenses. ECF 16-5 at 3, 19. That case was forwarded to the Circuit Court for Calvert County on October 18, 2018, C-04-CR-18-000262 (ECF 16-5 at 5, 21) because Harvey was indicted on October 15, 2018. *See* ECF 16-5 at 6; *see also Harvey v. Armstead*, Civil Action No. ELH-19-1441 (D. Md.), ECF 9.[2]

Harvey entered DOC custody in October 2018, on a parole retake warrant. He claims that he was held against his will, "without a final revocation hearing in contravention of COMAR [Code of Maryland Regulations] 12.08.01.22 F(2)(a)." ECF 1 at 4.[3] According to Harvey, while he was incarcerated at Patuxent, he was locked in a cell for multiple weeks at a time based on no wrongdoing on his part, deprived of a shower for at least five days, allowed only 15 minutes per day outside of his cell, and not fed enough food. *Id.* at 4-5. Harvey also claims that he witnessed a stabbing, which contributed to his emotional and mental stress. *Id.* In addition, Harvey alleges that Patuxent does not have a law library and has been on lock down, denying visits to attorneys

---

[2] On May 16, 2019, Harvey filed a petition for writ of habeas corpus, in *Harvey v. Warden*, ELH-19-1441, ECF 1. That case is pending.

[3] All citations reflect their electronic pagination.

and inmates' families. *Id.*

Defendants acknowledge that Harvey arrived at Patuxent on October 25, 2018, as a parole violator pending a revocation hearing. ECF 16-2, Decl. of April Coccagna-Graham, ¶2. According to defendants, inmates at Patuxent have access to recreation and showers unless there is a security issue that is occurring within the institution. *Id.* ¶¶4, 5. During security issues, recreation and showers are denied until the tier is cleared for contraband, shanks, and other weapons. *Id.* Once cleared, the staff allows two inmates at a time to shower. *Id.* ¶5. Defendants note that inmate cells are equipped with a sink and toilet, and inmates are never without the ability to clean themselves if they cannot get a shower. *Id.*

According to defendants, inmates are fed three meals a day. *Id.* ¶11. If there is a security issue occurring within the institution, inmates are given brown bag meals at their housing unit door. *Id.* Similarly, inmates have access to the library. *Id.* ¶12. If an inmate cannot go to the library, such as during an institutional lock down, the inmate can submit a request for materials from the library, and the materials are brought to the inmate's location. *Id.*

Defendants state that inmates are allowed visits and phone calls unless there is a security issue going on at the institution. *Id.* ¶¶6, 10. They note that Harvey had a legal visit on March 20, 2019. *Id.* ¶6. If an inmate has an emergency, that inmate can request to speak to a custody supervisor regarding a phone call. *Id.* ¶10. Defendants also state that even if the housing unit tier is on lock down, inmates are allowed to send and receive mail. *Id.* ¶8.

While at Patuxent, Harvey was on tier E-3 for housing and on tier L-3 for disciplinary segregation. *Id.* ¶13. On November 13, 2018, tier E-3 was placed on lock down for approximately 30 days while investigations were ongoing due to several fights on the tier. *Id.* It was placed on lock down again on April 10, 2019, for a period of almost two weeks, due to multiple fights on the

tier as well as shanks and weapons being found on the tier and on inmates. *Id.* Tier E-3 was again placed on lock down beginning on May 6, 2019, for approximately 30 days, due to multiple shanks and weapons found on the tier and on inmates. *Id.*

As noted, Harvey filed this suit on April 8, 2019. ECF 1. On April 30, 2019, Harvey was placed on tier L-3 for disciplinary segregation after being found to have a 6-inch shank/weapon on his person. ECF 16-2, ¶13. Harvey remained on tier L-3 for 30 days and returned to tier E-3 on May 29, 2019. *Id.* Harvey returned to tier L-3 on June 5, 2019, due to fighting on tier E-3, and remained on tier L-3 until June 16, 2019. *Id.*

On May 3, 2019, Harvey filed Administrative Remedy Procedure ("ARP"), No. PATX 0321-19, complaining that he had been held on a parole violation for over 6 months and had not had a hearing. ECF 16-2 at 3. That same day, the ARP was dismissed for procedural reasons, explaining that "inmates may not seek relief through the ARP process regarding Maryland Parole Commission procedures and decisions." *Id.* According to records of the Maryland Department of Public Safety and Correctional Services ("DPSCS"), Harvey did not file any other ARPs while he was housed at Patuxent. ECF 16-2, ¶14. In addition, the DOC states that it has no record of receiving an ARP appeal from Harvey. ECF 16-3, Decl. of Ebone' Janifer. Samiyah Hassan, the Administrative Officer at the Inmate Grievance Office ("IGO"), states that Harvey did not file a grievance with the IGO. ECF 16-4, Decl. of Samiyah Hassan, ¶ 2.

On June 27, 2019, Harvey was released from Patuxent to his Calvert County detainer by Continuation of Mandatory Supervision. ECF 16-2, ¶ 3.

Records filed in the case of *Harvey v. Warden*, ELH-19-1441, reflect that on June 25, 2019, Maryland Parole Commissioner John Custer recalled the parole retake warrant issued by the

Commission. *Id.*, ECF 9-1.[4]  He wrote on the "Action Form" as follows: "Release to Calvert Co * No Bail Status." Further, he directed the "Agent to monitor Bail status and notify MPC if it changes." *Id.*  Therefore, Harvey was released from Patuxent on June 27, 2019. *Id.*, ECF 9-2.

## II.    Standard of Review

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

---

[4] The Court may take judicial notice of these records. *See* Rule 201 of the Federal Rules of Evidence; *see also*, *e.g.*, *Goldfarb v. Mayor and City Council of Baltimore*, 91 F.3d 500, 508 (4th Cir. 2015).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds

that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that

the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Harvey has not filed an affidavit under Rule 56(d). As to Armstead, I am satisfied that it is appropriate to address the Motion as one for summary judgment, as this will facilitate resolution of the case. As to MPP and the "State Attorney General," I shall construe the Motion as one to dismiss under Rule 12(b)(6).

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see*

*Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 2019 WL 1105179, at *3 (4th Cir. Mar. 11, 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (*per curiam*). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see Variety Stores, Inc. v. Wal-mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Wilson v. Prince George's County*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most

favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

Because Harvey is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (same). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### III.    Discussion

In their Motion, defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(6) or summary judgment under Rule 56. They argue that (1) the Eleventh Amendment bars this suit against MPP, the State Attorney General, and Armstead in her official capacity; (2) State agencies and departments are not persons within the meaning of 42 U.S.C. § 1983; (3) there are no facts alleged against Armstead or the State Attorney General; (4) defendants did not personally participate in the alleged wrongdoing; (5) Harvey failed to exhaust his administrative remedies; (6) Harvey fails to state a claim upon which relief can be granted regarding the conditions of his confinement; (7) Harvey has failed to establish a claim of lack of access to court; (8) Harvey's requests for nonmonetary relief are moot; (9) no due process violation occurred based on a

violation of defendants' policies; and (10) defendants are entitled to qualified immunity.  ELH-19-01051, ECF 16-1.

## A.  Eleventh Amendment

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any Foreign State."  The Eleventh Amendment did not create sovereign immunity.  Rather, it preserved the sovereign immunity that the states enjoyed prior to the formation of the Union.  *See Alden v. Maine*, 527 U.S. 706, 724 (1999); *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011).

The preeminent purpose of state sovereign immunity is "to accord states the dignity that is consistent with their status as sovereign entities[.]"  *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002).  Thus, states generally enjoy immunity from suits brought in federal court by their own citizens.  *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890); *see also Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984).  In other words, under the Eleventh Amendment, a private individual is barred from bringing a suit against a state in federal court to recover damages, unless the state consents or there is an exception to sovereign immunity.  *See Coleman v. Court of Appeals of Md.*, 556 U.S. 30, 35 (2012) ("A foundational premise of the  federal system is that States,  as sovereigns,  are immune from suits for damages, save as they elect to waive that defense."); *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting

States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted); *Edelman v. Jordan*, 415 U.S. 651 (1974).

In addition, absent waiver or a valid congressional abrogation of sovereign immunity, sovereign immunity also bars suit against an instrumentality of a state, sometimes referred to as an "arm of the state." *See Pennhurst*, 465 U.S. at 101-02 ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). The Office of the Maryland Attorney General is a State agency.[5] And, MPP is a Division in the DPSCS. Md. Code (2017 Repl. Vol.), § 6-103 of the Correctional Services Article ("C.S."). In turn, the DPSCS is an arm of the state. *Id.* §§ 2-101, 3-201; *see also Clarke v. Maryland Dep't of Pub. Safety and Corr. Servs.,* 316 Fed. App'x 279, 282 (4th. Cir. 2009) (stating that "the Maryland Department of Public Safety and Correctional services is undoubtedly an arm of the state for purposes of §1983" and therefore immune from suit).

Moreover, claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity. This is because a suit against a state actor is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

The Fourth Circuit has noted three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state. In *Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244 (4th Cir. 2012), the Court said, *id.* at 249 (internal quotations omitted):

First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) . . . . Second, the Eleventh Amendment permits suits for prospective

---

[5] In their memorandum (ECF 16-1), defendants point out that it is not clear whether plaintiff intended to sue the Office of the Attorney General or an office of a State's Attorney, as no address was provided by plaintiff. *Id.* at 1 n.1.

injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002).

Neither the State of Maryland nor DPSCS has waived immunity for claims brought pursuant to § 1983. Nor do the exceptions outlined above apply here.

Accordingly, the State Attorney General, MPP, and Armstead, in her official capacity, are immune from Harvey's claims for monetary damages; those claims shall be dismissed.

As Harvey is no longer incarcerated at Patuxent, his claims for injunctive relief are moot. Article III of the Constitution limits the judicial power to "actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III – when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks omitted). Where injunctive or declaratory relief is requested in an inmate's complaint, it is possible for events occurring subsequent to the filing of the complaint to render the matter moot. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); *see also Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 248-49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief).

Additionally, as to actions taken by Armstead in her individual capacity, the Complaint must also be dismissed, as Harvey does not allege any individual acts or omissions on her part. Liability under §1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

In any event, as outlined below, the court must reject Harvey's claims.

## B. Revocation Hearing

Harvey alleges that his due process rights were violated when he was improperly held at Patuxent for over 60 days without a final revocation hearing, in violation of COMAR 12.08.01.22(F)(2)(a), which states:

> A parole revocation hearing shall be held within 60 days after apprehension of the parolee on the parole violation warrant, *except that failure to hold the hearing within the 60-day period may not be in contravention of this paragraph if the parole violation warrant is not the sole document under which the parolee is detained or incarcerated.* This paragraph may not serve to invalidate the action of the Parole Commission in revoking the parole of an individual if, under all the circumstances, the revocation hearing is held within a reasonable time after the parolee was apprehended and detained for violation of parole under the parole violation warrant.

(Emphasis supplied).

Here, it appears that the parole retake warrant was not the sole basis under which Harvey was detained. He was also held on a no bond status in Calvert County courts, making the 60-day hearing requirement potentially inapplicable.

In any event, to the extent Harvey is seeking an Order mandating the MPP to provide him with a parole revocation hearing, this Court does not have jurisdiction to grant mandamus relief in this instance. Under 28 U.S.C. § 1361, the federal district courts have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or one of its agencies to perform a duty owed to a petitioner; this mandamus jurisdiction does not apply to State employees. *See Gurley v. Superior Court of Mecklenburg County*, 411 F.2d 586, 587 (4th Cir. 1969).

To the extent Harvey seeks an Order requiring his release from detention, the claim is a matter of state law and must first be presented to the state court for review before being presented

to this court as a petition for federal habeas relief. *See Francis v. Henderson*, 425 U.S. 536, 538 (1976) ("This Court has long recognized that in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forgo the exercise of its habeas corpus power."); *see also Timms v. Johns*, 627 F. 3d 525, 531 (4th Cir. 2010) (applying exhaustion requirements to 2241 petition challenging civil commitment). The claim must be fairly presented to the state courts; this means presenting both the operative facts and controlling legal principles. *See Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (citations omitted). Exhaustion includes appellate review by the Maryland Court of Special Appeals and potentially the Maryland Court of Appeals. *See Granberry v. Greer*, 481 U.S. 129, 134-35 (1987). The state courts are to be afforded the first opportunity to review federal constitutional challenges to state convictions in order to preserve the role of the state courts in protecting federally guaranteed rights. *See Preiser v. Rodriguez*, 411 U.S. 475 (1973).

Harvey has already filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2241 regarding this matter. *See Harvey v. Armstead*, Civil Action No. ELH-19-1441. That case is presently pending before this court.

## C. Conditions of Confinement

As to Harvey's claims regarding the conditions at Patuxent, defendants raise the affirmative defense that Harvey has failed to exhaust his administrative remedies, as required by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The PLRA provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004).[6]

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence and provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (citations omitted). A claim that has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is

---

[6] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted). Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Id.* at 651, 898 A.2d at 960 (citation omitted). Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id.*, nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC. *See Abramson v. Corr. Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000).

Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," C.S. § 10-304, for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy. *See Dixon v. DPSCS*, 175 Md. App. 384, 927 A.2d 445 (2007). On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

mandatory. *Ross v. Blake*, 136 S.Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 136 S.Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process so that the agency reaches a decision on the merits. *Chase*, 286 F. Supp. at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003)

(noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement so that the agency addresses the merits of the claim, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford*, 548 U.S. at 88, 93. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 93 (quoting *Pozo*, 286 F.3d at 1024) (emphasis in original). But, the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Notably, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). The Fourth Circuit addressed the meaning of "available" remedies in *Moore*, 517 F. 3d at 725, stating:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

In *Ross v. Blake*, 136 S.Ct. 1850 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id.* at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 1855. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore,* 517 F.3d at 725.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S.Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

The DPSCS has an established ARP for use by Maryland State prisoners for "inmate complaint resolution." *See generally* C.S. §§ 10-201 *et seq.*; COMAR 12.07.01.01B(1) (defining ARP); OPS.185.0002.02.[7] The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction. . . ." C.S. § 10-206(a).

---

[7] OPS.185.0002 is an Executive Directive created by DPSCS, titled "Administrative Remedy Procedure (ARP)" ("ARP Directive") available for review at http://itcd.dpscs.state.md.us/PIA. "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance to include a "complaint of any individual in the custody of the Department of Correction [("DOC")] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement." COMAR 12.07.01.01B(8). An inmate "must exhaust" the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D; OPS.185.0002.02.

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the IGO against any DOC official or employee. C.S. § 10-206(b). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *See* C.S. § 10-206(b); *see also* OPS.185.0002.02. A grievance must be filed in writing, in a format approved by the IGO, or by use of an ARP form. COMAR 12.07.01.04(A). And, the grievance must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.07.01.05A.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official" OPS.185.0002.05C(1). In C.S. § 1-101(k), a "managing official is defined "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." In the DPSCS, each facility's warden is responsible for the ARP at the institutional level. OPS.185.0002.05E.

'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see also* Fed. R. Evid. 201(b)(2) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. OPS.185.0002.05J.

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP. The prisoner has 30 days to file an appeal with the DPSCS's Deputy Secretary for Operations or that official's designee. OPS.185.0002.05L. For prisoners in DOC facilities, the Commissioner of Correction is the official to whom this appeal is sent. *Id.*

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. OPS.185.0002.05D; C.S. § 10-206(a); COMAR 12.07.01.05B. When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B.

An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208(2)(c); COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07D; *see also* Md. Code (2014 Repl. Vol.), State Gov't §§ 10-101 *et seq.*

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(i) & (ii); COMAR 12.07.01.10A. However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision

constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)(2), (c).

The final agency determination is subject to judicial review in a Maryland circuit court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. An inmate need not, however, seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

Harvey failed to exhaust his administrative remedies regarding the conditions claims asserted here. Despite being housed in Patuxent for approximately eight months, Harvey did not file an ARP regarding the alleged conditions there. *See* COMAR 12.07.01.05A (stating that a grievance must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later). He does not claim that he has otherwise exhausted all of his administrative remedies via some ARP grievance that the defendants failed to present to the court. Nor does he claim that administrative remedies were "unavailable" to him for any of the reasons specified by the *Ross* Court. Accordingly, because Harvey has failed to exhaust his administrative remedies, his conditions claims must be rejected.

## IV.    Conclusion

Suit against MPP shall be dismissed. No genuine issue as to any material fact is presented and defendant Armstead is entitled to judgment as a matter of law.[8]

A separate Order follows.

---

[8] In light of the disposition, it is not necessary to address defendants' remaining arguments.

December 11, 2019                                    /s/
Date                                                Ellen L. Hollander
                                                    United States District Judge